**UNITED STATES of America,**
**Plaintiff,**

v.

**CONTENTS OF FOUR BANK ACCOUNTS LOCATED IN THE BANK OF DADEVILLE, Dadeville, Alabama, etc., et al., Defendants.**

No. CIV.A. 3:04CV391–A.

United States District Court,
M.D. Alabama,
Northern Division.

Aug. 6, 2004.

John T. Harmon, U.S. Attorneys Office, Montgomery, AL, for Plaintiff.

David B. Byrne, Jr., Capell Howard PC, George L. Beck, Jr., Capell Howard PC, Montgomery, AL, Louie Lee Sims, Jr., L. Lee Sims PC, Dadeville, AL, for Defendants.

George Lamar Beck, Jr., Capell Howard PC, Montgomery, AL, for Claimants.

Peggy L. Schmitz, Alabama Medicaid Agency, Montgomery, AL, for Movant.

## *MEMORANDUM OPINION AND ORDER*

ALBRITTON, Senior District Judge.

## I. *INTRODUCTION*

This cause is before the court on a Motion to Dismiss (Doc. # 31) filed by Contents of Four Bank Accounts Located in the Bank of Dadeville, Dadeville, Alabama; Claimants Wayne Willard, Sr. and Faith Hospice, Inc. (individually "Willard" and "FHI", collectively "Claimants") on June 28, 2004.

On April 23, 2004, the United States of America ("Government") filed a Verified Complaint for Forfeiture *In Rem.* The Claimants seek dismissal of the Verified Complaint and return of the contents of the seized accounts. This court has jurisdiction pursuant to 28 U.S.C. § 1331.

For the reasons to be discussed, the Claimants' Motion to Dismiss is due to be DENIED.

## II. *MOTION TO DISMISS STANDARD*

A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir.1986) ("[W]e may not ... [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief.") (citation omitted). The court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party. *Hishon,* 467 U.S. at 73, 104 S.Ct. 2229. Furthermore, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir.1985).

## III. *FACTS*

The allegations of the Plaintiff's Complaint are as follows:

On June 28, 2004, the Government filed a Verified Complaint for Forfeiture *In Rem* seeking to enforce 18 U.S.C. § 981(a)(1)(C) for forfeiture of real and personal property which constitutes and is derived from proceeds traceable to a violation of Title 18, United States Code, Section 1347, which is a specified unlawful activity under 18 U.S.C. § 1956(c)(7)(F).

Louie E. Wilson, Jr., a Special Agent with the Internal Revenue Service, Criminal Investigation Division, investigated

Charles Wayne Willard, Sr. (also known as Wayne Willard). His affidavit formed the basis for the Government's Redacted Verified Complaint.

On February, 13, 2001, Willard formed a corporation called Faith Hospice, Inc. (FHI) in Tallapoosa Country, Alabama. Willard was the sole officer and the only officer listed in the corporate filings. The stated nature of the business is to provide comfort, care, and medical services. The offices of FHI are in Alexander City, Alabama.

On February 21, 2001, Willard opened a checking account titled Faith Hospice, Inc. with the account number XXXXXX5401 [1] at the Bank of Dadeville. Over the next eighteen months Willard opened thirteen additional checking accounts at the Bank of Dadeville. The accounts are as follows:

| Account # | Title of Account |
|---|---|
| XXXXXX5402 | Faith Hospice, Inc.—Payroll Account |
| XXXXXX5403 | Faith Hospice, Inc.—Benefits/Taxes Account |
| XXXXXX5404 | Faith Hospice, Inc.—Donations Account |
| XXXXXX5405 | Faith Hospice, Inc.—Public Relations/Education Account |
| XXXXXX1006 | Wayne Willard/Tina Willard |
| XXXXXX2101 | Faith Hospice, Inc.—General Business Account |
| XXXXXX9606 | Wayne Willard/Tina Willard [2] |
| XXXXXX9106 | Wayne Willard DBA ATAPTH |
| XXXXXX0506 | Wayne Willard DBA Eagle Marketing |
| XXXXXX5301 | Wayne Willard DBA Homecare Hospice Management |
| XXXXXX0106 | Wayne Willard/Wayne Willard, Jr. |
| XXXXXX2406 | Ashley C. Walters [3]/Wayne Willard |
| XXXXXX7601 | Faith Hospice, Inc.—Operating Account |

On June 7, 2001, FHI was certified as a Medical Hospice Provider and subsequently began billing Medicare for services provided to FHI's clients. These claims are submitted to and processed by an intermediary called Palmetto GBA. Palmetto pays these claims directly to FHI. Payments on these claims are electronically directly deposited in the Faith Hospice, Inc.—General Business Account (XXXXXX2101).

Willard routinely transfers large sums of money from this account to his other accounts particularly the Faith Hospice, Inc.—Operating Account (XXXXXX7601), Wayne Willard/Tina Willard (XXXXXX9606), Wayne Willard DBA ATAPTH (XXXXXX9106), Wayne Willard DBA Eagle Marketing (XXXXXX0506), and Wayne Willard DBA Homecare Hospice Management (XXXXXX5301). In addition to legitimate business expenses, Willard appears to be paying from the Faith Hospice, Inc.—General Business Account (XXXXXX2101) numerous personal expenses including large payments to jewelry stores, marinas, car dealerships, and motorcycle dealerships. Also, large checks of $5,000.00 to $10,000.00 were drawn from this account made payable to Cash, Wayne Willard, Tina Willard, and Wayne Willard, Jr. The three doing business as accounts [4] and the Wayne Wil-

1. The court uses X in manner consistent with the redacted complaint, which allows the court to identify the accounts without disclosing the full account numbers in a public document.

2. Tina Willard is the wife of Charles Wayne Willard, Sr.(also known as Wayne Willard).

3. Walters is believed to be the niece of Charles Wayne Willard, Sr.

4. Wayne Willard DBA ATAPTH (XXXXXX9106)(balance as of close of business April 16, 2004 ($349,415.30)), Wayne Willard DBA Eagle Marketing (XXXXXX0506)($349,632.10), and Wayne Wil-

lard/Tina Willard account (XXXXXX9606)[5] appear to have been used to store money; other than deposits, these accounts witnessed almost no activity. Willard routinely withdraws currency in $10,000.00 increments. Several bank tellers at the Bank of Dadeville have reported to bank executives that Willard is familiar with the Currency Transaction Reporting requirements and that he intentionally keeps his cash transactions just below the reporting threshold.

Willard and his wife travel frequently. The check card associated with Wayne Willard/Tina Willard account (XXXXXX1006) has been utilized to make payments for hotel rooms, meals, and merchandise purchases in Alabama, Louisiana, Florida, Georgia, Mississippi, North Carolina, New York, Nevada, and the Bahamas. Alabama Department of Motor Vehicles records show that numerous vehicles are registered to Willard including a 2003 Cadillac CTS, a 2002 Cadillac Deville, a 2003 Chevrolet Corvette, a 2003 Oldsmobile Bravada, a 2003 Ford F–150, a 2003 Honda GL1800 motorcycle, a 2003 Harley–Davidson motorcycle, and two 2002 Titan motorcycles. Nevertheless, the Internal Revenue Service records obtained via an ex parte court order indicate that Willard has failed to file personal federal income tax returns for the years 1999, 2000, 2001, and 2002.

On December 16, 2002, Assistant United States Attorney (AUSA) Tommie Hardwick sent a letter to Palmetto GBA requesting a comparison of billing practices and amounts for FHI versus other hospice providers. As previously stated, FHI's Medicare billing claims are submitted to and processed by Palmetto GBA, which pays these claims directly to FHI by electronically directly depositing the funds in the Faith Hospice, Inc.—General Business Account (XXXXXX2101). On December 30, 2002, Palmetto GBA responded by indicating that FHI's average reimbursement for 2001 exceeded the state average by $ 1,381.00 per patient and exceeded the national average by $3,473.00 per patient. For the first half of 2002, FHI's average reimbursement exceeded the state average by $1,053.00 per patient and exceeded the national average by $2,250.00 per patient.

On June 17, 2003, AUSA Hardwick wrote to TriCenturion, LLC, which is a Medicare contractor tasked with safeguarding the Medicare Trust Fund by detecting and preventing Medicare fraud and abuse. Hardwick requested that TriCenturion provide statistical samples of FHI beneficiaries for the years 2001 and 2002. On July 14, 2003, TriCenturion provided the requested Statistical Random Claims Samples for FHI in 2001 and 2002. Each sample contained claims for thirty FHI clients. The 2001 sample included claims submitted for services rendered in June and July of 2001. The 2002 sample included claims submitted for services rendered in January of 2002. In comparing these claims samples, investigators noted that the names of nine different clients appeared in both samples. This seemed unusual since one of the primary factors in qualifying for hospice eligibility is a medical determination that the patient likely has less than six months to live.

On September 24, 2003, Hardwick requested that TriCenturion perform medical record reviews for the sixty beneficiaries named in the previously provided 2001 and 2002 claims samples. The medical records reviews are performed by nurses at TriCenturion, who are knowledgeable concerning hospice eligibility requirements and hospice billing practices. The nurses performed a review of the beneficiary file

---

lard DBA Homecare Hospice Management (XXXXXX5301)($349,630.10).

**5.** The balance of this account as of close of business on April 16, 2004 was $149,422.37.

including pre-admission information, diagnosis, beneficiary interviews, initial certification, recertifications (if applicable), plans of care and claims records. The nurses then prepared a summary of their findings and issued a recommendation based on appropriateness of the submitted claims. On April 15, 2004, TriCenturion provided Hardwick with the requested medical records reviews. Of thirty sample claims reviewed for 2001, nineteen were deemed not hospice appropriate and three additional were categorized as deniable because of other reasons. Of the thirty sample claims reviewed for 2002, fourteen were deemed "not hospice appropriate" and four others were categorized as deniable for other reasons. Based upon these finding, TriCenturion was able to calculate the projected amount of overpayment to FHI for the years 2001 and 2002. Those projections are $438,518.35 in 2001 and $1,347,496.86 in 2002, for a total of $1,786,015.21 over those two years.

Agent Wilson asserted that "based upon the information contained in [his] affidavit, there is probable cause to believe that Charles Wayne Willard is currently defrauding the United States Medicare program by routinely submitting fraudulent claims from Faith Hospice, Inc. to Palmetto GBA and that Charles Wayne Willard is storing a large portion of these ill-gotten gains in account numbers XXXXXX9106, XXXXXX0506, XXXXXX5301, and XXXXXX9606 at the Bank of Dadeville." Wilson Affidavit at ¶ 15. The total value of these accounts as of close of business on April 16, 2004 was $1,198,099.87.

"[T]he Court being satisfied, based on the Verified Complaint of Forfeiture, there is probable cause to believe that the contents of Defendant accounts so described constitutes and are derived from proceeds traceable to such violations of Title 18, United States Code, Section 1347, and that grounds for application for issuance of warrant of arrest for articles *in rem* exist, pursuant to Supplemental Rule C(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims ..." issued a warrant and summons for arrest *in rem* of these Defendant bank accounts.

## IV. *DISCUSSION*

The Claimants argue that "under [18 U.S.C. § ] 984(b) the government is prohibited from commencing a seizure of fungible goods from a banking institution for an offense more than one year after the commission of the alleged offense." Claimants' Motion at ¶ 4. They contend that the provision is applicable to the present case because the contents of seized bank accounts are fungible property, under 18 U.S.C. § 984, from a financial institution. *See id.* at ¶¶ 1–2. The Government argues that the Claimants are applying the wrong section, that the seizure of the contents of the four bank accounts was pursuant to 18 U.S.C. § 981, not 18 U.S.C. § 984. Government's Response at ¶ 2. Thus, the Government asserts that the applicable statute of limitations under 18 U.S.C. § 981 is five years, not one year. *Id.* at ¶ 5. The Claimants, however, insist that "[c]ontrary to Government's assertions, ... it is clear that § 984 establishes the procedure to be followed in forfeiture actions where *fungible property* is at issue." Claimants' Reply at ¶ 2. The issue before this court is whether the Government is required, when it seizes fungible property deposited in a financial institution, to act under the 18 U.S.C. § 984, or whether it may act pursuant to 18 U.S.C. § 981.

Title 18 U.S.C. § 984(d) provides that "[n]othing in this section may be construed to limit the ability of the Government to forfeit property under any provision of law if the property involved in the offense giving rise to the forfeiture or

property traceable thereto is available for forfeiture." Through the enactment of a new subsection (d) of 18 U.S.C. § 984 as part of Civil Reform Forfeiture Act of 2000, Congress resolved a dispute among courts regarding the relationship between 18 U.S.C. § 984 and other forfeiture sections, notably for purposes of this case 18 U.S.C. § 981.[6] Subsection (d) makes it clear that § 984 "enhances rather than replaces and limits the government's forfeiture powers. Where the government cannot prove the traceability of fungible property, as required by § 981, the government is free to proceed under § 984." *U.S. v. Contents in Account No. 059–644190–69*, 253 F.Supp.2d 789, 794 (D.Vt. 2003). Thus, "where the government can establish property is traceable to an offense giving rise to forfeiture, it is free to proceed under any other provision of law, whether or not the property is fungible." *Id.* As long as, 1) the property involved in the offense giving rise to the forfeiture is available for forfeiture or 2) property traceable thereto is available for forfeiture, the Government is not required, simply

because the case involves fungible property, to proceed under 18 U.S.C. § 984. 18 U.S.C. § 984(d). Where the Government can met the requirements of 18 U.S.C. § 981, it may proceed on that basis.

Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense . . ." is subject to forfeiture to the United States. "[A]ny act or activity constituting an offense involving a Federal health care offense" is specified unlawful activity. 18 U.S.C. § 1956(c)(7)(F). 18 U.S.C. § 1347, which is a federal health care fraud offense, provides the alleged criminal activity that generated the contents of the four bank accounts.

"When the government seizes property under § 981, it must prove that the property is itself involved in, or is traceable to property involved in, a proscribed transaction. The tracing requirement, however,

---

**6.** Prior to the enactment of subsection (d), the United States District Court for the Eastern District of New York concluded that "[a]ll forfeitures of fungible property involved in money laundering or structuring violations are subject to a one-year statute of limitations." *U.S. v. All Funds Presently on Deposit or Attempted to be Deposited in any Accounts Maintained at American Exp. Bank,* 832 F.Supp. 542, 559 (E.D.N.Y.1993). Similarly, the United States District Court for the Southern District of New York stated "this Court finds that section 984 applies to this action as the government seeks civil forfeiture of fungible property based on allegations which include purported violations of 31 U.S.C. § 5322, 18 U.S.C. §§ 1956 and 1957." *Marine Midland Bank, N.A. v. U.S.,* Nos. 93 Civ. 0307(RPP), 93 Civ. 0357(RPP), 1994 WL 381536, at *3 (S.D.N.Y. July 20, 1994); *see also United States v. $3,148,884.40 United States Currency (Seized from Accounts of Bital),* 76 F.Supp.2d 1063, 1067 (C.D.Cal.1999). The Eastern District of New York, in a case

decided after the enactment of subsection (d) but commenced before the Civil Reform Forfeiture Act of 2000, concluded that all forfeitures of fungible property were necessarily under 18 U.S.C. § 984, not 18 U.S.C. § 981. *U.S. v. Weiss,* No. 99 CV 1453, 2001 WL 1150217, at *2–3 (E.D.N.Y. Sept. 21, 2001), *rev'd on other grounds* (the Second Circuit on appeal in *U.S. v. All Funds Distributed To, or o/b/o Weiss,* 345 F.3d 49, 54 (2d Cir.2003) vacated the decision, but expressly did not reach the issue of interrelationship between § 981 and § 984).

Even before the enactment of new subsection (d) of 18 U.S.C. § 984, some courts concluded that the Government could still seize fungible property under 18 U.S.C. § 981. *U.S. v. Contents in Account No. 059–644190–69,* 253 F.Supp.2d at 793 (citing *United States v. One Parcel of Real Property with Buildings, Appurtenances and known as 170 Westfield Dr.,* 34 F.Supp.2d 107, 116–18 (D.R.I.1999); *United States v. One 1997 E35 Ford Van,* 50 F.Supp.2d 789, 806–07 (N.D.Ill.1999)).

poses particular problems in the case of money or other fungible property." *Contents in Account No. 059–644190–69*, 253 F.Supp.2d at 792. The reason that a particular problem is posed is that "[o]nce money is deposited into a bank account, the government cannot trace the physical currency. Furthermore, how can the government trace fungible property, like money, back to proscribed conduct once it has been commingled with other fungible property?" *Id.*

Title 18 U.S.C. § 981(a)(2) provides that "[s]eizures pursuant to this section shall be made pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure ...." To seize property under 18 U.S.C. § 981, "the Government must demonstrate that there was probable cause to believe that the property is subject to forfeiture." *In re Seizure of All Funds in Accounts in Names Registry Pub. Inc.*, 68 F.3d 577, 580 (2d Cir.1995) (citing *Marine Midland Bank, N.A. v. United States*, 11 F.3d 1119, 1124 (2d Cir. 1993)). The court has already reached a determination with regard to probable cause and traceability in issuing the warrant and summons for arrest *in rem*. The court stated the following: "the Court being satisfied that, based on the Verified Complaint of Forfeiture, there is probable cause to believe that the contents of the Defendant accounts so described constitutes and are derived from proceeds traceable to such violations of Title 18, United States Code, Section 1347, and that grounds for application for issuance of a warrant of arrest for articles *in rem* exist, pursuant to Supplemental Rule C(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims ...." Redacted Warrant and Summons for Arrest *In Rem* at p. 1–2. The Claimants have not in their motion to dismiss shown any basis or argument that warrants reconsideration of this determination.

## V. *CONCLUSION AND ORDER*

For the reasons discussed, the court concludes that the Government may proceed under 18 U.S.C. § 981; thus, the Claimants' Motion to Dismiss (Doc. # 31) is due to be and is hereby ORDERED DENIED.